STATE OF CONNECTICUT *v.* WILLIAM TOBY WRIGHT, SR.
(13064)

HEALEY, SHEA, CALLAHAN, COVELLO and SANTANIELLO, Js.

---

Argued December 10, 1987—decision released May 3, 1988

*Denise Dishongh* and *Louis S. Avitabile,* special public defenders, for the appellant (defendant).

*Christopher Malany,* deputy assistant state's attorney, with whom were *James G. Clark,* assistant state's attorney, and, on the brief, *John A. Connelly,* state's attorney, and *Peter Markle,* assistant state's attorney, for the appellee (state).

SANTANIELLO, J. The defendant, William Toby Wright, Sr., was charged in a two part indictment by a grand jury,[1] on July 29, 1981, with manslaughter in the first degree, in violation of General Statutes

---

[1] At the time of defendant's indictment on July 29, 1981, article first, § 8, of the Connecticut constitution provided in relevant part: "[N]o person shall be held to answer for any crime, punishable by death or life imprisonment, unless on a presentment or an indictment of a grand jury, except in the armed forces, or in the militia when in actual service in time of war or public danger."

§ 53a-55 (a) (1),[2] and with being a persistent danger-ous felony offender, in violation of General Statutes § 53a-40 (a).[3] After a jury trial the defendant was found guilty on both charges and was sentenced to a term of imprisonment of twenty-five years to life. The defendant appealed from the final judgment of convic-tion, and on January 14, 1986, this court set aside the judgment and remanded the case for a new trial.[4]

On July 17, 1986, prior to the start of the defendant's second trial, the defendant reserved the right to chal-

---

The corresponding statutory section, General Statutes (Rev. to 1981) § 54-45 (b), provides: "No person shall be put to plea or held to trial for any crime the punishment of which may be death or imprisonment for life unless an indictment has been found against him for such crime by a grand jury legally impaneled and sworn, and no bill shall be presented by any grand jury unless at least twelve of the jurors agree to it."

[2] General Statutes (Rev. to 1981) § 53a-55 (a) (1) provides: "A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such per-son or of a third person."

[3] General Statutes (Rev. to 1981) § 53a-40 (a) provides: "A persistent dan-gerous felony offender is a person who (1) stands convicted of manslaugh-ter, arson, kidnapping, sexual assault in the first or third degree, sexual assault in the first or third degree with a firearm, robbery in the first or second degree, or assault in the first degree; and (2) has been, prior to the commission of the present crime, convicted of and imprisoned, under a sen-tence to a term of imprisonment of more than one year or of death, in this state or in any other state or in a federal correctional institution for any of the following crimes: (A) The crimes enumerated in subdivision (1), the crime of murder, or an attempt to commit any of said crimes or murder; or (B) prior to October 1, 1975, any of the crimes enumerated in section 53a-72, 53a-75 or 53a-78 of the general statutes, revision of 1958, revised to 1975, or prior to October 1, 1971, in this state, assault with intent to kill under section 54-117, or any of the crimes enumerated in sections 53-9, 53-10, 53-11, 53-12 to 53-16, inclusive, 53-19, 53-21, 53-69, 53-78 to 53-80, inclusive, 53-82, 53-83, 53-86, 53-238 and 53-239 of the general statutes, revision of 1958, revised to 1968, or any predecessor statutes in this state, or an attempt to commit any of said crimes; or (C) in any other state, any crimes the essential elements of which are substantially the same as any of the crimes enumerated in subdivision (1) or (2)."

[4] *State* v. *Wright,* 198 Conn. 273, 502 A.2d 911 (1986).

lenge the grand jury array.[5] The trial began on July 30, 1986, and ended on July 31, 1986, when the defendant entered *Alford* pleas[6] to both parts of the indictment. A plea canvass ensued. On August 29, 1986, the court imposed a single sentence of not less than fifteen nor more than thirty years incarceration.[7] The defendant thereafter filed this appeal.

The defendant makes the following claims of error: (1) that he was indicted by a racially discriminatory grand jury; (2) that the sentence imposed was not in accordance with the plea agreement; and (3) that the trial court's judgment was constitutionally invalid due to the court's failure to advise him of the mandatory minimum sentences for the crimes charged.

## I

The defendant first claims that the composition of the grand jury was racially discriminatory and that that discrimination violated the equal protection clauses of the Connecticut and United States constitutions.[8] On July 21, 1981, the defendant, a black man, was indicted by an all white grand jury. The defendant contends that there were no blacks on the grand jury that indicted him, nor were there any on the grand juries that served

---

[5] The defendant raised this issue at his first trial but did not pursue it. On July 25, 1986, the court held a hearing on the defendant's motion, at which time the defendant claimed that the court lacked subject matter jurisdiction because the grand jury that indicted the defendant was racially discriminatory. The court denied the motion.

[6] *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[7] Both the plea and sentencing took place before the same judge.

[8] The fourteenth amendment to the United States constitution, § 1, provides: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

during the previous year of 1980-81.[9] The state maintains that a showing of intentional and systematic exclusion of blacks on the grand jury is required to establish a violation of equal protection and that the defendant failed to prove such intentional exclusion. We agree.

Selection of a grand jury in a discriminatory fashion may be challenged under the equal protection clause of the fourteenth amendment. *Dobbs* v. *Kemp,* 809 F.2d 750, 751 (11th Cir.), cert. denied, 481 U.S. 1059, 107 S. Ct. 2203, 95 L. Ed. 2d 858 (1987); *Gibson* v. *Zant,* 705 F.2d 1543, 1546 (11th Cir. 1983). Equal protection of the laws is denied to a criminal defendant indicted by a grand jury composed in a discriminatory manner that results from purposeful exclusion of members of a racial group. *Vasquez* v. *Hillery,* 474 U.S. 254, 262, 106 S. Ct. 617, 88 L. Ed. 2d 598 (1986); *Rose* v. *Mitchell,* 443 U.S. 545, 556, 99 S. Ct. 2993, 61 L. Ed. 2d 739 (1979); *Castaneda* v. *Partida,* 430 U.S. 482, 493, 97 S. Ct. 1272, 51 L. Ed. 2d 498 (1977); *Alexander* v. *Louisiana,* 405 U.S. 625, 628–29, 92 S. Ct. 1221, 31 L. Ed. 2d 536 (1972). "A criminal defendant 'is entitled to require that the State not deliberately and systematically deny to members of his race the right to participate as jurors in the administration of justice.' " *Rose* v. *Mitchell,* supra, 551. The constitution does not, however, require that members of a grand jury be selected in any particular fashion. *State* v. *Avcollie,* 188 Conn.

Article first, § 20, of the Connecticut constitution provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his civil or political rights because of religion, race, color, ancestry or national origin."

[9] Defense counsel now claims that there were no blacks on any black defendant's grand jury in the history of the Superior Court at Waterbury until after the defendant's grand jury on July 29, 1981. The state does not take issue with this position. The record reveals that this was not the claim raised before the trial court.

626, 634, 453 A.2d 418 (1982), cert. denied, 461 U.S. 928, 103 S. Ct. 2088, 77 L. Ed. 2d 299 (1983); *State* v. *Villafane,* 164 Conn. 637, 644, 325 A.2d 251 (1973). In order for there to be compliance with the constitutional mandate prohibiting intentional discrimination on the basis of race or class, a cognizable group must not be systematically excluded. Id., 644–45. The constitution does not, however, require that the grand jury be comprised of a "statistical mirror" of the community. Id., 646.

An equal protection claim in the context of a grand jury challenge demands proof of a discriminatory purpose. *State* v. *Castonguay,* 194 Conn. 416, 421, 418 A.2d 56 (1984). Purposeful discrimination is present where "significant unexplained disparities exist alongside an opportunity to discriminate." *State* v. *Villafane,* supra, 647.

When a defendant challenges a grand jury array on the ground that he has been denied equal protection under the law, the defendant must show that the procedure resulted in substantial underrepresentation. *Castaneda* v. *Partida,* supra, 494. "The first step is to establish that the group is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied . . . . Next, the degree of underrepresentation must be proved, by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors, over a significant period of time. . . . This method of proof, sometimes called the 'rule of exclusion,' has been held to be available as a method of proving discrimination in jury selection against a delineated class. . . . Finally, as noted above, a selection procedure that is susceptible of abuse or is not racially neutral supports the presumption of discrimination raised by the statistical showing." (Citations omitted.) Id.; see *State* v. *Castonguay,* supra, 421. Establishing a prima

facie case of discriminatory purpose by virtue of showing substantial underrepresentation of a cognizable group shifts the burden to the state to refute the existence of an equal protection violation by showing the use of racially neutral selection criteria. *Castaneda* v. *Partida,* supra, 495; *Alexander* v. *Louisiana,* supra, 631–32. Where a conviction enters against a defendant indicted by a racially discriminatory grand jury, the conviction must be reversed and the indictment quashed. *Vasquez* v. *Hillery* supra, 260–64; *Rose* v. *Mitchell,* supra, 554.

The defendant contends that the case before this court is not one of underrepresentation of blacks on a grand jury, but is instead an instance of no representation, which is itself sufficient to make out a prima facie showing of racial discrimination. The defendant further contends that the state's failure to deny the allegation that there were no blacks on a black defendant's grand jury before July 29, 1981, constitutes an admission by the state that it is unable to name any blacks who sat on a grand jury during this period.

The United States Supreme Court has clearly enunciated the showing that must be made in order to establish a prima facie case of a violation of equal protection in the context of a grand jury challenge, which this court has recognized. *Castaneda* v. *Partida,* supra, 494–95; *State* v. *Castonguay,* supra, 421. Unlike the defendant now before this court, those seeking to have their convictions reversed on the basis of an equal protection violation in the composition of a grand jury have offered evidence in support of their claim. See, e.g., *Reece* v. *Georgia,* 350 U. S. 85, 87–88, 76 S. Ct. 167, 100 L. Ed. 77 (1955) (petitioner presented uncontroverted evidence showing no blacks on grand jury for eighteen years); *Patton* v. *Mississippi,* 332 U.S. 463, 464–68, 68 S. Ct. 184, 92 L. Ed. 76 (1947) (petitioner introduced evidence that showed without contradiction

that no blacks had served on grand jury for thirty years); *Hill* v. *Texas,* 316 U.S. 400, 402–404, 62 S. Ct. 1159, 86 L. Ed. 1559 (1942) (testimony showing absence of blacks on grand jury for significant time period sufficient to make out prima facie case); compare *Rose* v. *Mitchell,* supra, 570–74 (testimony failed to cover significant time period; no evidence of total number of grand jury foremen appointed and without such evidence it was difficult to assess whether number of black people, even if zero, was so significant as to make out discrimination case under rule of exclusion; normally state's concession that petitioner has made out prima facie case might be given effect but inadequacy of petitioner's proof is plain); *Dobbs* v. *Kemp,* supra, 752 (meager evidentiary showing insufficient to establish prima facie case).

The defendant in this case failed to introduce any evidence in support of his contention that he was indicted by a racially discriminatory grand jury. The defendant's assertion that there were no blacks on a black defendant's grand jury for a significant time period is insufficient in itself to establish an equal protection violation. There is no error.

## II

The defendant next contends that the trial court erred in denying his motion to withdraw his plea on the ground that the judgment and sentence were not in accordance with the plea agreement. On July 31, 1986, the defendant entered *Alford* pleas to the charges of manslaughter in the first degree and being a persistent dangerous felony offender. The plea agreement discussed during the proceedings entailed a sentence of incarceration of not less than fifteen nor more than thirty years.[10] On August 29, 1986, the court imposed

[10] The state noted that it had not entered into any plea bargain with the defendant but was instead seeking the maximum sentence.

a sentence of ten to twenty years on the charge of manslaughter in the first degree and a consecutive sentence of five to ten years on the persistent dangerous felony offender charge, for a total effective sentence of not less than fifteen nor more than thirty years of imprisonment. An off-the-record discussion ensued, after which the court "corrected" the sentences and imposed a single sentence of not less than fifteen nor more than thirty years. Defense counsel thereafter moved to withdraw the defendant's pleas. The motion was denied by the court.

The defendant contends that he pleaded guilty under the *Alford* doctrine with the expectation of receiving two consecutive sentences and that as the single sentence finally imposed was not in accordance with the plea agreement, he should be allowed to withdraw his plea, or have this court remand the case for sentencing in accordance with the expected plea.

An examination of the plea canvass reveals that the court understood that the sentence, with both charges, would be fifteen to thirty years, that the offer of fifteen to thirty years was fair, that the court had informed the defendant that, as a result of his plea to the persistent dangerous felony offender charge, the offense could be upgraded to an A felony with a maximum sentence of twenty-five years to life and that the court had asked if the plea bargain of fifteen to thirty years was the reason the defendant was pleading guilty, to which the defendant replied affirmatively. At no time during the canvass did the defendant refer to an expectation of receiving two consecutive sentences or the effect that such a sentence would have on his parole eligibility.

At the sentencing hearing, the defendant contended for the first time that it was his "position" that the court had the power to sentence him to ten to twenty years on the manslaughter offense, and to five to ten

years on the persistent dangerous felony offender charge, with the sentences to run consecutively. The defendant further claimed that it was his belief that there were two charges combined into one upon which separate sentences should be imposed.[11] The court responded that the "agreement is no less than fifteen nor more than thirty, and that is the sentence of the Court, period."

The record fails to substantiate the defendant's claim that the sentence imposed was not in accordance with the agreement. On the contrary, the record is replete with references to an effective sentence of fifteen to thirty years. As the defendant had received a single sentence at the conclusion of his first trial, he was presumably aware of the existence of such a sentence structure at the time of entering his plea. This court finds that the sentence imposed complied with the plea agreement. There is no error.

## III

The defendant's final claim of error is that the trial court's judgment is constitutionally invalid because of the court's failure to advise the defendant of the mandatory minimum sentences for the crimes charged as required by Practice Book § 711.[12] The defendant failed

---

[11] Although the defendant claims that he expected to receive two consecutive sentences, separate sentences cannot be imposed where a defendant is subject to being punished as a persistent dangerous felony offender. General Statutes § 53a-40 (f) provides in relevant part that "the court, in lieu of imposing the sentence of imprisonment . . . for the crime of which such person presently stands convicted" may impose an enhanced sentence.

[12] Practice Book § 711 provides: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he fully understands:

"(1) The nature of the charge to which the plea is offered;

"(2) The mandatory minimum sentence, if any;

"(3) The fact that the statute for the particular offense does not permit the sentence to be suspended;

"(4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sen-

to raise this omission before the trial court but contends that the claim is reviewable under the doctrine of "exceptional circumstances" as enunciated in *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), or in the alternative, under the plain error doctrine.[13] The state concedes that the court failed to inform the defendant of the mandatory minimum sentences but contends that this omission does not involve a fundamental constitutional right or the fairness of the proceeding and is therefore not reviewable.

"In the absence of exceptional circumstances involving either a recently discovered constitutional right or a showing that the defendant has been deprived of a fundamental constitutional right and a fair trial, claims which are raised for the first time on appeal will not be considered by this court." *State* v. *Gates,* 198 Conn. 397, 401, 503 A.2d 163 (1986); *State* v. *Badgett,* 200 Conn. 412, 417, 512 A.2d 160, cert. denied, 479 U. S. 940, 107 S. Ct. 473, 93 L. Ed. 2d 373 (1986); *State* v. *Evans,* supra, 69–70. Those claims which implicate the knowing and voluntary nature of a plea are reviewable under the exceptional circumstances doctrine of *State* v. *Evans,* supra. *State* v. *Gilnite,* 202 Conn. 369, 380–81 n.13, 521 A.2d 547 (1987); *State* v. *Badgett,* supra, 417–18; *State* v. *Godek,* 182 Conn. 353, 355–56, 438 A.2d 114 (1980), cert. denied, 450 U.S. 1031, 101 S. Ct. 1741, 68 L. Ed. 2d 226 (1981). This court will

---

tences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and

"(5) The fact that he has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he has the right to be tried by a jury or a judge and that at that trial he has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself."

[13] Practice Book § 4185 provides in relevant part: "The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The supreme court may in the interests of justice notice plain error not brought to the attention of the trial court."

undertake limited review to determine if the claim, as set forth by the defendant, affects the knowing and voluntary nature of the plea.

A guilty plea is itself a conviction; *Boykin* v. *Alabama,* 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); *Paulsen* v. *Manson,* 203 Conn. 484, 489, 525 A.2d 1315 (1987); and a defendant, when entering such a plea, waives several constitutional rights. *Boykin* v. *Alabama,* supra, 243; *McCarthy* v. *United States,* 394 U.S. 459, 466, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969); *Paulsen,* v. *Manson,* supra; *State* v. *Gilnite,* supra, 381. First is the privilege against self-incrimination, second is the right to a jury trial, and third is the right to confront one's accusers. *Boykin* v. *Alabama,* supra; *McCarthy* v. *United States,* supra; *State* v. *Gilnite* supra, 381 n.14. To ensure that a defendant is accorded due process, the plea must be voluntarily and intelligently entered. *Boykin* v. *Alabama,* supra, 243 n.5; *McCarthy* v. *United States,* supra; *Paulsen* v. *Manson,* supra; *Oppel* v. *Lopes,* 200 Conn. 553, 556, 512 A.2d 888 (1986); *State* v. *Badgett,* supra, 418; *State* v. *Lopez,* 197 Conn. 337, 341–42, 497 A.2d 390 (1985). A determination as to whether a plea has been knowingly and voluntarily entered entails an examination of all of the relevant circumstances. *Brady* v. *United States,* 397 U.S. 742, 749, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970); *Paulsen* v. *Manson,* supra, 491.

An examination of the plea canvass reveals the following: The state's attorney delineated the factual basis which would be produced to establish the defendant's guilt of manslaughter in the first degree and indicated that the facts introduced at the second trial would be the same as those introduced at the first trial. The court inquired whether the defendant was under the influence of alcohol or drugs, whether the defendant had had sufficient time to consult with his lawyer and discuss the evidence the state claimed to have, whether

the defendant had been forced or threatened to plead guilty, and whether the defendant believed, in light of the evidence of the state and the advice of counsel, that if he were to go to trial he would probably be found guilty and would receive, or probably receive, a harsher sentence than the one he would receive under the plea bargain. The court recited the jury charge for manslaughter in the first degree so as to ensure that the defendant understood the charge. The court informed the defendant that he was giving up the right to a trial by court or jury with the assistance of counsel, the right not to be compelled to incriminate himself, the right to plead not guilty and to continue to plead not guilty and require the state to prove his guilt beyond a reasonable doubt, the right to confront witnesses against him, to cross-examine those witnesses, to present witnesses on his behalf and to testify himself, and the right to present any defenses. The court informed the defendant that if it accepted the *Alford* plea there would not be a trial but that he would be sentenced by the court. The court then went through a similar canvass on the charge of being a persistent dangerous felony offender.

This review indicates that the plea was knowingly and voluntarily entered. This court finds that the trial court's failure to advise the defendant of the mandatory minimum sentences did not, in itself, implicate constitutional rights, where the record reveals that the plea was intelligently and voluntarily made.

The defendant contends, in the alternative, that his claim is reviewable under the plain error doctrine. Where a trial court's action does not result in any manifest injustice, a defendant's claim under the plain error doctrine does not warrant review. *State* v. *Miller,* 202 Conn. 463, 469, 522 A.2d 249 (1987); *State* v. *Hinckley,* 198 Conn. 77, 87, 502 A.2d 388 (1985). " 'Such review is reserved for truly extraordinary situations where the existence of the error is so obvious that it

affects the fairness and integrity of and public confidence in the judicial proceedings.' " *State* v. *Miller,* supra, 469, quoting *State* v. *Hinckley,* supra, 87–88. Having concluded that the trial court's omission in failing to advise the defendant of the mandatory minimum sentences did not implicate constitutional rights and that the defendant knowingly and voluntarily entered his guilty plea, this court finds that the trial court's action did not result in any manifest injustice. The claim, therefore, does not warrant review under the plain error doctrine.

There is no error.

In this opinion the other justices concurred.