STATE OF CONNECTICUT *v.* KEVIN LEE JACKSON
(11674)

LAVERY, LANDAU and SCHALLER, Js.

Argued January 6—decision released June 7, 1994

*Suzanne Zitser,* assistant public defender, for the appellant (defendant).

*Jack W. Fisher,* assistant state's attorney, with whom, on the brief, were *Eugene Callahan,* state's attorney, and *Robert Katz,* senior assistant state's attorney, for the appellee (state).

SCHALLER, J. The defendant, Kevin Lee Jackson, appeals from the judgment of conviction, rendered after a jury trial, of burglary in the second degree in violation of General Statutes § 53a-102[1] and larceny in the first degree in violation of General Statutes § 53a-122.[2]

---

[1] General Statutes § 53a-102 provides in pertinent part: "(a) A person is guilty of burglary in the second degree when he enters or remains unlawfully in a dwelling at night with intent to commit a crime therein."

[2] General Statutes § 53a-122 provides in pertinent part: "(a) A person is guilty of larceny in the first degree when he commits larceny as defined in section 53a-119 and . . . (2) the value of the property or service exceeds ten thousand dollars . . . ."

General Statutes § 53a-119 provides in pertinent part: "LARCENY DEFINED. A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

The defendant claims that the trial court improperly (1) failed to provide a limiting instruction on the use of the defendant's prior felony convictions, (2) failed to instruct the jury on the element of intent to commit a crime as to the burglary count, and (3) instructed the jury on reasonable doubt. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At about 8 p.m. on April 10, 1991, Ernest and Zulma Heidelberg, along with their daughter Denise, left their home in Westport to go out for dinner. When they returned at approximately 9:30 p.m., they immediately observed that doors that had been shut when they left were open, and lights that they had turned off were on. Ernest Heidelberg entered the house and found that several items, including jewelry, had been removed and other items, such as clothing, were out of place. He also discovered a pile of appliances, including a television, a stereo and a microwave oven, on the lawn outside of their house.

The Westport police arrived and conducted a search of the house and premises. At that time, the police did not locate any suspects within the house, on the premises or in the vicinity. Although the police attempted to lift fingerprints, the results were inconclusive due to smudges and overlaps.

The following day, April 11, 1991, in preparing an inventory of missing items, Ernest discovered a wallet and black cap on the lawn beneath a dining room window. This window had been closed when the Heidelbergs left for dinner the previous evening, but was open when they returned. He also found a glove in the woodpile in the backyard. None of the items belonged to the family.

Detective Michael Barrett took the items into custody. In the wallet, Barrett found six appointment cards

from a probation officer who testified at trial that the cards referred to scheduled meetings with the defendant. Barrett also discovered several tickets from a Bridgeport pawn shop in the wallet. Barrett went to the pawn shop that had issued the tickets, took photographs of the items that had been pawned, informed the store owner to put a hold on the items, and instructed the owner to tell any person who came to claim the items to contact the Westport police department. Barrett later determined that the pawned items had not been taken from the Heidelberg residence. The owner of the pawn shop subsequently contacted Barrett and informed him that the defendant had attempted to redeem the items, but that he instructed the defendant to contact the Westport police.

On April 12, 1991, the defendant called Barrett and told him that he wanted to report the theft of his wallet in Bridgeport a few days earlier, that he had already reported the theft to the Bridgeport police, and that he understood that the wallet had been discovered at the site of a burglary in Westport. The defendant agreed to go to the Westport police station later that day to give a sworn statement, but failed to meet with Barrett. The defendant was arrested subsequently and charged with the crimes of burglary and larceny.

At trial, the defendant presented an alibi defense. Testimony and evidence presented by the defendant indicated that in the late afternoon on April 10, 1991, he went out to dinner with a girlfriend. After dinner, at approximately 5 p.m., he and his girlfriend drove directly to his sister's home in Bridgeport, where they spent the night. The defendant and his girlfriend left his sister's home briefly, at about 7:30 p.m., to buy some liquor at a nearby store.

I

We first address the defendant's claim that the court improperly failed to provide a limiting instruction

regarding the use of the defendant's felony convictions. Further facts are necessary to address the issue. After the trial, counsel for the defense and for the state entered into a stipulation of facts[3] stating in part that defense counsel submitted to the trial judge in chambers written requests to charge, which included a request concerning the limitations on the use of the defendant's prior felony convictions. Defense counsel, however, failed to file a copy of that request with the court clerk, and failed to take exception to the charge as given.

The threshold question that we must address is whether the claim is reviewable. Practice Book § 852[4]

---

[3] The stipulation of facts, dated March 5, 1993, stated as follows:

"STIPULATION OF FACTS

"The respective attorneys involved in the trial of the above captioned case stipulate to the following facts:

"1. Prior to the court's instructions to the jury on January 27, 1992, an in-chambers conference was held concerning the court's proposed jury charge. The conference was attended by Attorney Robert Katz on behalf of the state of Connecticut, Attorney Mark Warren on behalf of the defendant, and Judge Hickey.

"2. Both Attorneys' Katz and Warren had prepared and planned to file their respective requests to charge, copies of which are attached to this stipulation.

"3. The attorneys submitted the requests to charge to Judge Hickey, who reviewed them. Attorney Warren recalls that Judge Hickey informed counsel that his prepared instructions included the substance of said requests. Attorney Katz has no recollection either that this statement was or was not made by Judge Hickey.

"4. Judge Hickey has no recollection of what occurred in his chambers regarding this charging conference.

"/s/ Judge William F. Hickey, Jr.

"/s/ Robert Katz
Assistant State's Attorney

"/s/ Attorney Mark Warren
Defendant's Trial Counsel"

[4] Practice Book § 852 provides: "The supreme court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is deliv-

requires that a party either file a written request to charge or take an exception to the charge as given in order to preserve the issue for appeal. The defendant first contends that the act of *submitting* a written request to charge to the trial judge is the functional equivalent of *filing* the request to charge with the court clerk, and therefore, satisfies the provisions of § 852.

In *State* v. *Deptula,* 31 Conn. App. 140, 623 A.2d 525 (1993), appeal dismissed, 228 Conn. 852, 635 A.2d 812 (1994), we discussed the requirements set forth in § 852 in the context of a claim that the defendant's written request to charge and exception to the charge as given were inadequate. There we stated that "[w]hile we would prefer it if the defendant's counsel had drafted a more thorough request to charge, or if he had made a more specific exception, we will review this claim because the defendant *substantially complied* with the requirements of Practice Book § 852 and the court understood the grounds for the objection. There is no need to hold the defendant to the strict requirement where, as here, the purpose of the rule has been satisfied." (Emphasis added.) Id., 147.

We now examine the circumstances presented in this case to determine whether the defendant has substantially complied with § 852. Section 852 contains no provision stating that a claim of error in the jury instructions is preserved by a written request to charge submitted directly to the trial court judge rather than filed with the court clerk. Further, the failure to file a copy of the request to charge with the clerk leaves the trial court file void of any official reference to the request to charge. Without such official reference in the trial

ered. Counsel taking the exception shall state distinctly the matter objected to and the ground of objection. Upon request, opportunity shall be given to present the exception out of the hearing of the jury."

court file, the documents presented to the judge in chambers were not final requests to charge, but rather, were proposed documents subject to change by the defendant when he filed requests to charge with the trial court clerk. We conclude that the process of providing the trial court judge, in chambers, with proposed requests to charge does not rise to the level of substantial compliance with § 852.

We conclude that the failure of the defendant either to file the written request to charge or to take an exception to the charge as given renders the issue unpreserved for appeal.

## II

The defendant next contends that the trial court's instruction on the essential element of intent for the crime of burglary was constitutionally inadequate. The defendant failed to take an exception to this charge at trial, and seeks review of this unpreserved claim pursuant to *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989), or pursuant to the plain error doctrine as set forth in Practice Book § 4185. In *State* v. *Golding,* supra, 239–40, our Supreme Court held "that a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail."

We conclude that the record is adequate for review of the alleged claim of error. In addition, because the

failure to instruct the jury adequately with regard to an essential element of the crime may result in a due process violation implicating the fairness of the trial; *State* v. *Hinton,* 227 Conn. 301, 313–14, 630 A.2d 593 (1993); *State* v. *Allen,* 216 Conn. 367, 383, 579 A.2d 1066 (1990); *State* v. *Taft,* 25 Conn. App. 149, 153, 593 A.2d 973, cert. denied, 220 Conn. 918, 597 A.2d 343 (1991); we conclude that the issue is one of constitutional magnitude implicating a fundamental right.

We now examine whether the alleged violation clearly exists and clearly deprived the defendant of a fair trial. At the outset, we note that, under the third prong of *Golding,* "a defendant may prevail on an unpreserved constitutional claim of instructional error only if, considering the substance of the charge rather than the form of what was said, it is reasonably possible that the jury was misled. . . . *State* v. *McMurray,* 217 Conn. 243, 253, 585 A.2d 677 (1991)." (Internal quotation marks omitted.) *State* v. *Walton,* 227 Conn. 32, 65, 630 A.2d 990 (1993). Our Supreme Court has further held that "[a] jury instruction is constitutionally adequate if it provides the jurors with a clear understanding of the elements of the crime charged, and affords them proper guidance for their determination of whether those elements were present. . . . *State* v. *Usry,* 205 Conn. 298, 316, 533 A.2d 212 (1987); *State* v. *Sinclair,* 197 Conn. 574, 581, 500 A.2d 539 (1985); see *State* v. *Wood,* 208 Conn. 125, 132, 545 A.2d 1026, cert. denied, 488 U.S. 895, 109 S. Ct. 235, 102 L. Ed. 2d 225 (1988)." (Internal quotation marks omitted.) *State* v. *Avila,* 223 Conn. 595, 602–603, 613 A.2d 731 (1992).

The specific portion of the trial court's charge at issue is as follows: "Now as to burglary in the second degree as defined in Section 53a-102 of the Connecticut General Statutes which reads as follows, 'A person is guilty of burglary in the second degree when he enters or

remains unlawfully in a dwelling at night with intent to commit a crime therein.' The State must prove beyond a reasonable doubt, one, that the defendant knowingly entered or remained unlawfully in the premises, two, that said premises constituted a dwelling, three, that the unlawful entry or remaining was effected or occurred with the defendant's intent to commit a crime in the night, and four, that this was effected or occurred with the defendant's intent to commit a crime in the night, and four, that this was effected or occurred at night." The court clearly explained that each element of the crime, including the intent to commit a crime within the dwelling, had to be proven beyond a reasonable doubt. Although the court later discussed the element of intent with regard to the crime of larceny, the court did not elaborate further on the element of intent for the crime of burglary.[5]

In *State* v. *Sinclair,* supra, 197 Conn. 580–81, our Supreme Court rejected the claim that the trial court's failure to provide the statutory definition of intent during its instructions on the crime of burglary in the second degree amounted to a constitutional violation. In that case, the court noted that the trial court had explained that the jury had to be convinced beyond a reasonable doubt that the defendant intended to commit a crime within the dwelling. The court stated that "the trial court's failure specifically to define intent, at least in the absence of a request or exception by the defendant, was not reversible error because it is not reasonably possible that the jury was misled as to its meaning. The word intent was used in its ordinary sense, in a manner which clearly conveyed what had to be proven by the state to justify a conviction. '[W]hen

---

[5] During the trial court's charge on larceny, the court provided a general definition of intent and explained further the element of intent in relation to larceny. Upon review of the entire jury instructions, it is clear that this instruction on intent pertained solely to the crime of larceny.

a word contained in an essential element carries its ordinary meaning, failure to give the statutory definition will not constitute error.' *State* v. *Kurvin,* [186 Conn. 555, 562, 442 A.2d 1327 (1982)]." Id., 581; see *State* v. *Howard,* 204 Conn. 1, 3–4, 526 A.2d 526 (1987) (citing *Sinclair* as governing court's conclusion that failure to provide statutory definition of intent did not render jury instructions inadequate).

In this case, the trial court clearly explained that the state had to prove that the defendant intended to commit a crime within the building. The court later reiterated that the state had to prove, beyond a reasonable doubt, that "the unlawful entry or remaining was effected or occurred with the defendant's intent to commit a crime in the night . . . ." The court thus linked the element of intent with a criminal purpose. Upon review of the trial court's instructions, we conclude that, although the court could have provided more thorough instructions through the use of the statutory definition of intent or through further explanation of the role of intent in this crime, it is not reasonably possible that the jury was misled. As a result, the defendant's claim fails under the third prong of *State* v. *Golding,* supra, 213 Conn. 239–40.

In addition, "[i]t is . . . well established that plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. *State* v. *Wright,* 207 Conn. 276, 288–89, 542 A.2d 299 (1988); *State* v. *Miller,* 202 Conn. 463, 469, 522 A.2d 249 (1987)." (Internal quotation marks omitted.) *State* v. *Boles,* 223 Conn. 535, 551, 613 A.2d 770 (1992); *State* v. *Sawyer,* 32 Conn. App. 854, 856–57, 632 A.2d 372, cert. denied, 228 Conn. 911, 635 A.2d 1230 (1993). We conclude that the defendant's claim does not rise to a level warranting plain error review.

## III

Finally, the defendant contends that trial court improperly instructed the jury regarding reasonable doubt when it explained that "[a] reasonable doubt is a doubt . . . for which a valid reason can be assigned . . . ." This issue was not preserved at the trial court, and the defendant now seeks review of this unpreserved claim under either *State* v. *Golding,* supra, 213 Conn. 239–40, or the plain error doctrine.

Similar claims have been raised in several other cases, and have been rejected consistently. See, e.g., *State* v. *Campbell,* 225 Conn. 650, 626 A.2d 287 (1993); *State* v. *Thomas,* 214 Conn. 118, 570 A.2d 1123 (1990); *State* v. *Crosby,* 34 Conn. App. 261, 641 A.2d 406 (1994); *State* v. *Jackson,* 29 Conn. App. 584, 617 A.2d 174 (1992), appeal dismissed, 228 Conn. 59, 634 A.2d 293 (1993). We conclude that the instructions regarding reasonable doubt, as a whole, adequately informed the jury that the state had the burden of proving the defendant guilty beyond a reasonable doubt. See *State* v. *Campbell,* supra, 662; *State* v. *Crosby,* supra, 276. As a result, we also conclude that no constitutional violation exists that clearly deprived the defendant of a fair trial. We decline, therefore, to grant review of this claim pursuant to *State* v. *Golding,* supra, 233, and conclude, as well, that plain error review is unwarranted.

The judgment is affirmed.

In this opinion the other judges concurred.