STATE OF CONNECTICUT *v.* RAY BOYD
(13077)

DUPONT, C. J., and SCHALLER and SPEAR, Js.

Argued September 26, 1994—decision released January 3, 1995

*Richard Emanuel,* assistant public defender, for the appellant (defendant).

*Marjorie Allen Dauster,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *David P. Gold,* assistant state's attorney, for the appellee (state).

SCHALLER, J. The defendant appeals[1] from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a.[2] The defendant claims that the trial court improperly (1) instructed the jury that prior inconsistent statements could not be used for substantive purposes, but could be used only to assess credibility, (2) instructed the jury on reasonable doubt, and (3) permitted the

---

[1] This appeal was taken originally to the Supreme Court. Pursuant to Practice Book § 4023, the Supreme Court transferred the appeal to this court.

[2] General Statutes § 53a-54a provides in pertinent part: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

prosecutor's remarks in violation of the defendant's rights to an impartial jury and a fair trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the evening of September 23, 1989, Tony O'Neal died of multiple gunshot wounds after he was shot near the intersection of Howard Avenue and Putnam Street in New Haven. Earlier that day, there had been an argument concerning drug sales on that street. The dispute involved Gerald Robinson and David Robinson, on one side, and Tony O'Neal and Keith Batchelor, on the other. The Robinsons were complaining about O'Neal and Batchelor's selling "beat" or "dummy" bags, that is, bags that contained flour or sugar rather than cocaine, which the Robinsons claimed affected their business. On the night of the murder, several young men, including the Robinsons, their friend Lonnie Jackson, Christopher Shaw, O'Neal and the defendant arrived at the same location. Almost immediately, Jackson and O'Neal began to argue. The defendant approached the two, "nudged" Jackson aside and, with a pistol that he had obtained from Gerald Robinson, fired several bullets into O'Neal. O'Neal died as a result of his injuries.

The following additional facts are necessary for the resolution of this appeal. The day after the shooting, when Gerald Robinson was questioned at his home by the New Haven police, he said he knew nothing about the murder. Three days later, the police brought him to the police station and informed him that a witness had told them that she had seen him with a handgun near the scene of the crime. He then changed his story and told police that the defendant was the one who shot O'Neal.

Gerald Robinson's statements caused police officers to go to the home of the defendant. Initially, the defend-

ant told them that he had been home at the time of the shooting. Three days later, the police brought the defendant to the police station. There, the defendant identified Shaw as the person who had shot O'Neal. Shaw initially denied having been at the scene of the crime and said that the defendant was not present either. As they had done previously with Gerald Robinson and the defendant, the police took Shaw to the police station to confirm his statement. At the station, the police informed Shaw that he was a prime suspect in the murder of O'Neal. Upon hearing this, Shaw admitted that he had been at the scene of the crime and said that he had seen a "brown skinned guy" wearing a college "Starter" jacket shoot O'Neal.

After their initial investigation, the police had three different versions of the shooting. Gerald Robinson had implicated the defendant. The defendant had implicated Shaw. Shaw said that a "brown skinned guy" had shot O'Neal. The police arrested Shaw for the murder. Immediately after his arrest, Shaw related a new version of the incident. He said that, not only was the defendant present at the scene of the crime, but that the defendant had fired the gun. Thereafter, the police arrested the defendant.

At trial, Gerald Robinson, Shaw, and the defendant provided their versions of what had happened on the night O'Neal was murdered. In their testimony, Robinson and Shaw implicated the defendant. In response, the defendant insisted that Shaw had shot O'Neal. On September 30, 1992, the jury found the defendant guilty of murder.

## I

The defendant claims, and the state agrees, that the trial court improperly instructed the jury on the use of prior inconsistent statements. The jury should have been charged that the prior inconsistent statements of

the witnesses should have been considered for their truth and not merely for impeachment purposes. *State v. Whelan*, 200 Conn. 743, 756–57, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986).

At trial, the defendant requested the following instruction: "The earlier contradictory statements are admissible only to impeach the credibility of the witness and not to establish the truth of these statements." In response to that request, the court gave a limiting instruction that "[t]hose prior inconsistent statements are not admitted to prove the facts contained in those prior inconsistent statements but merely to show evidence of conduct inconsistent with the testimony here on the stand in front of you. It goes to the credibility of the witness." A reasonable interpretation of the defendant's request to charge and the court's instruction indicates that the court granted the defendant the limiting instruction that he requested.

We first note that the defendant has not properly preserved this claim for appellate review pursuant to Practice Book § 852,[3] and seeks review of an instruction that he requested and now claims was improper. Ordinarily, action induced by an appellant cannot be ground for error. In *State* v. *Walton*, 227 Conn. 32, 630 A.2d 990 (1993), where one of the defendants requested and was granted an erroneous pre-*Whelan* charge, the court determined that no review was warranted because he induced the error. In *State* v. *Scognamiglio*, 202 Conn. 18, 25, 519 A.2d 607 (1987), the court said, "It seems a bit disingenuous for the defendant to claim the trial court committed error by instructing the jury

[3] Practice Book § 852 provides in pertinent part: "The [appellate] court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. . . ."

on [prior inconsistent statements] when he requested an instruction on that very issue."

Although it is the general rule that a party cannot be heard to complain about such an instruction when he has requested it; *State* v. *Walton*, supra, 227 Conn. 32; *State* v. *Shipman*, 195 Conn. 160, 165, 486 A.2d 1130 (1985); unpreserved claims of constitutional magnitude, even when induced by the appellant, may be reviewed pursuant to *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973), and *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). Cf. *State* v. *Hinckley*, 198 Conn. 77, 81 n.2, 502 A.2d 388 (1985). "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, supra, 239–40; see also *State* v. *Evans*, supra, 61. The defendant claims review under those cases.

In *State* v. *Hinckley*, supra, 198 Conn. 77, which our Supreme Court relied on in *Walton*, the defendant conceded in his brief that he requested most of the challenged instruction, and the court held that the defendant's claim was not reviewable as an "exceptional circumstance" under *State* v. *Evans*, supra, 165 Conn. 70. Applying the Supreme Court's conclusion in *Hinckley* to the present case, we conclude that the defendant has failed to satisfy the second condition of *Evans-Golding* that the claim is an "exceptional circumstance" of constitutional magnitude. Our Supreme Court has held that an incorrect *Whelan* instruction is "an evidentiary error that did not involve the violation

of a constitutional right." *State* v. *Tatum*, 219 Conn. 721, 738, 595 A.2d 322 (1991); *State* v. *Wooten*, 227 Conn. 677, 701, 631 A.2d 271 (1993). The defendant, therefore, is not entitled to extraordinary review under *Evans-Golding*.

The defendant claims, in the alternative, that his claim is reviewable under the plain error doctrine. "[I]t is . . . well established that plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of the public confidence in the judicial proceedings. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Jackson*, 34 Conn. App. 599, 608, 642 A.2d 738, cert. granted, 231 Conn. 917, 648 A.2d 145 (1994); *State* v. *Boles*, 223 Conn. 535, 551, 613 A.2d 770 (1992); *State* v. *Wright*, 207 Conn. 276, 288–89, 542 A.2d 299 (1988); *State* v. *Hinckley*, supra, 198 Conn. 87–88.

In *Walton*, our Supreme Court addressed the issue of whether an erroneous pre-*Whelan* charge rises to the level of plain error. *State* v. *Walton*, supra, 227 Conn. 67–68. In *Walton*, the Supreme Court held that an erroneous pre-*Whelan* charge "does not rise to the level of 'plain error,' as that term of art is generally understood . . . ." Id. The defendant's claim that the instruction constitutes plain error must fail.

## II

The defendant next claims that the trial court improperly instructed the jury on "reasonable doubt" in violation of the due process clauses of the state and federal constitutions.[4] Specifically, the defendant challenges the trial court's definition of reasonable doubt. The trial court defined reasonable doubt as "a doubt for which

---

[4] Conn. Const., art. I, § 8; U.S. Const., amends. V, XIV.

a reasonable man or woman can give a valid reason." We find that definition to. be proper.

"The challenged instructions are similar or identical to jury instructions that have previously been approved by our Supreme Court. *State* v. *DePastino*, 228 Conn. 552, 572, 638 A.2d 578 (1994) ('a doubt for which a valid reason can be assigned'); *State* v. *Gomez*, 225 Conn. 347, 353, 622 A.2d 1014 (1993) ('a doubt for which a reasonable man or woman can give a valid reason'); *State* v. *Adams*, 225 Conn. 270, 290, 623 A.2d 42 (1993) ('a doubt for which a valid reason can be assigned'); *State* v. *Derrico*, 181 Conn. 151, 171, 434 A.2d 356, cert. denied, 499 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980) ('one for which you can, in your own mind, conscientiously give a reason'); *State* v. *Johnson*, 29 Conn. App. 584, 590, 617 A.2d 174 (1992) ('a doubt for which a valid reason may be assigned'), appeal dismissed, 228 Conn. 59, 634 A.2d 293 (1993) (certification improvidently granted)." *State* v. *Goodman*, 35 Conn. App. 438, 441–42, 646 A.2d 879 (1994). The defendant's claim, therefore, has no merit.

### III

The defendant's final assertion is that the prosecutor's misconduct during the state's rebuttal argument violated his federal and state constitutional rights to a fair trial and an impartial jury. The defendant's claim of misconduct related to the state's remarks during closing argument urging the jury to care, not only for the victim, but "for all the other people who live near that intersection" as well as other "potential victims" who were "endangered" by stray bullets.

We note, again, that the defendant did not properly preserve this claim for appellate review. Our Supreme Court has held that the failure of counsel for the defendant to take exception to the remarks of the state's attorney, either at the time they were made or at the close

of the state's attorney's argument, was a waiver of the right of the accused to press this as error. *State* v. *Lubesky*, 195 Conn. 475, 484, 488 A.2d 1239 (1985).

Conceding his failure to preserve this claim, the defendant, relying on *State* v. *Williams*, 204 Conn. 523, 529 A.2d 653 (1987), seeks review of the claim under *State* v. *Evans*, supra, 165 Conn. 61, and *State* v. *Golding*, supra, 213 Conn. 233. The defendant asserts, alternatively, that the claim is reviewable as plain error under Practice Book § 4185, which provides that the "court may in the interest of justice notice plain error not brought to the attention of the trial court."

We will examine the defendant's claim to determine whether the alleged constitutional violation clearly exists and whether it deprived the defendant of a fair trial. *State* v. *Torrence*, 196 Conn. 430, 435, 493 A.2d 865 (1985).

Our Supreme Court has held that although "prosecutorial misconduct of constitutional proportions may arise during the course of closing argument, thereby implicating the fundamental fairness of the trial itself; *State* v. *Williams*, [supra, 204 Conn. 539]; *State* v. *Pelletier*, 196 Conn. 32, 33–34, 490 A.2d 515 (1985) . . . *Evans* review of such a claim is unavailable where the claimed misconduct was not blatantly egregious and merely consisted of isolated and brief episodes that did not reveal a pattern of conduct repeated throughout the trial." *State* v. *Somerville*, 214 Conn. 378, 393, 572 A.2d 944 (1990).

Our review of the record discloses that the remarks now challenged represented isolated instances of alleged misconduct, unrepresentative of a pattern of conduct repeated throughout the trial. Because the defendant's claim of alleged misconduct challenges two isolated comments made during closing argument, he cannot establish the clear existence of a violation of his

constitutional rights or his right to a fair trial. Because the unpreserved claim of prosecutorial misconduct was not either blatantly egregious or part of a pattern of misconduct repeated throughout the trial; see *State* v. *Whitfield*, 21 Conn. App. 622, 628–29, 575 A.2d 1046, cert. denied, 216 Conn. 808, 580 A.2d 66 (1990); we decline to review this claim. See *State* v. *Castonguay*, 218 Conn. 486, 508, 590 A.2d 901 (1991); see also *State* v. *Williams*, supra, 204 Conn. 537.

Concerning the defendant's claim of plain error, "[i]t is . . . well established that plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Jackson*, supra, 34 Conn. App. 608. "[W]e do not find, as is necessary to merit plain error review, that those limited instances of improper conduct so pervaded the defendant's trial as to have impaired the effectiveness or integrity of the judicial process." *State* v. *Tweedy*, 219 Conn. 489, 509, 594 A.2d 906 (1991). Consequently, the defendant cannot succeed on this claim of impropriety.

The judgment is affirmed.

In this opinion the other judges concurred.