STATE OF CONNECTICUT *v.* KEVIN MORAN
(AC 17308)

Schaller, Hennessy and Daly, Js.

Argued December 7, 1998—officially released May 25, 1999

*William W. Westcott*, special public defender, for the appellant (defendant).

*Frederick W. Fawcett,* senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict,* state's attorney, and *John C. Smriga,* assistant state's attorney, for the appellee (state).

*Opinion*

DALY, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3). The defendant claims that the trial court improperly (1) instructed the jury that the defendant was required to prove his assertions by a fair preponderance of the evidence and (2) allowed rebuttal testimony that impeached the defendant on a collateral matter.

The jury reasonably could have found the following facts. On July 17, 1996, at about 9:30 p.m., Sundeep Gill, age sixteen, was working as a cashier at a gasoline station and convenience store operated by her parents and located at the corner of Boston and Noble Avenues in Bridgeport. Her sister, Navdeep Gill, age fourteen, was with her in the store and their mother was in the rear of the store. Her father was across the street at a similar establishment also owned by her parents.

Sundeep was standing in an enclosed cashier's booth, which had a three foot square opening with a sliding window to serve the customers. Ramesh Gangareddi, a family friend, was with her. Navdeep was standing near the dairy case and saw the defendant enter the store. As Sundeep was preparing to close the cash register, she also saw the defendant enter the store. Her back was to the defendant, when she heard him say, "Give me the money. Give me everything you have." When she turned around, she saw a knife in his hand.

Sundeep was unable to open the register and the defendant vaulted over the counter in front of the window, pulled the register out of the booth and ran to a

waiting car. Navdeep ran to her mother in the rear of the store while Sundeep called the police. The total elapsed time was between four and six minutes. Navdeep described the robber as being a white male, between five feet, ten inches and six feet tall with shoulder length, curly, dirty hair, big eyes and facial stubble. He was wearing a navy blue T-shirt with short sleeves and dark jeans. Two days later, both sisters went to the police station and independently selected the defendant's photograph. Officer Ferdinand Ferrao arrested the defendant on August 2, 1996, after viewing a wanted poster. The defendant's appearance was the same as in the photograph selected by both sisters. At trial, Sundeep made an in-court identification of the defendant.

The defendant testified that he resided less than a block away from the scene and, when arrested, had not changed his appearance. He maintained that he was at home with his mother on the evening in question and testified that he remembered his whereabouts because it was the night that TWA flight 800 crashed and he had discussed the event with his mother. The defendant appeared clean shaven with short hair and wore a suit at the time of trial. He indicated that his hair was cut while incarcerated and that he shaved his mustache because he was not permitted to have scissors to groom it and, therefore, "you don't really have a choice but to shave." The defendant denied altering his appearance to obfuscate the in-court identification. On cross-examination, the defendant admitted that there was no rule concerning hair length at the Bridgeport Correctional Center (center). The state called Captain Charles Shephard of the correctional center who testified in rebuttal, over objection, that there was no rule requiring an inmate to get a haircut prior to trial.

I

The defendant claims that the trial court's instruction on the defendant's burden of proof was improper. The

defendant failed to take exception to the charge at trial and seeks review of this unpreserved claim pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). In *Golding*, our Supreme Court held "that a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." Id., 239–40.

We conclude that the record is adequate for review of the defendant's claim. Because "the failure to instruct the jury adequately with regard to an essential element of the crime may result in a due process violation implicating the fairness of the trial"; *State* v. *Jackson*, 34 Conn. App. 599, 605–606, 642 A.2d 738, cert. granted [on other grounds], 231 Conn. 917, 648 A.2d 165 (1994) (appeal withdrawn October 18, 1994); we conclude that the issue is one of constitutional magnitude implicating a fundamental right.

We now examine whether the alleged violation clearly exists and clearly deprived the defendant of a fair trial. We note that, "under the third prong of *Golding*, a defendant may prevail on an unpreserved constitutional claim of instructional error only if, considering the substance of the charge rather than the form of what was said, it is reasonably possible that the jury was misled. . . . *State* v. *McMurray*, 217 Conn. 243, 253, 585 A.2d 677 (1991). . . . *State* v. *Walton*, 227 Conn. 32, 65, 630 A.2d 990 (1993). Our Supreme Court has further held that [a] jury instruction is constitutionally adequate if it provides the jurors with a clear under-

standing of the elements of the crime charged, and affords them proper guidance for their determination of whether those elements were present." (Citations omitted; internal quotation marks omitted.) *State* v. *Jackson,* supra, 34 Conn. App. 606.

"In determining whether the jury was misled, [i]t is well established that [a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . The charge must be considered from the standpoint of its effect on the jury in guiding them to a proper verdict." (Citations omitted; internal quotation marks omitted.) *State* v. *Ash,* 231 Conn. 484, 493–94, 651 A.2d 247 (1994).

In *State* v. *Mullings,* 202 Conn. 1, 13, 519 A.2d 58 (1987), and in the present case, the primary issue before the jury involved the identity of the robber, the defendant having offered an alibi defense. The challenged portion of the charge was delivered only once, during the court's general instructions pertaining to the burden of proof and not during its specific instructions on the elements of the crime. In this case, the defendant claims as a constitutional violation the following language from the trial court's charge: "The state has the burden at all times to establish each of the elements of the crime charged beyond a reasonable doubt. And should the defendant offer evidence, he has no burden of proving that which he wants to prove by proof beyond a reasonable doubt. He has a much lesser burden. He *may* be held to the burden of a fair preponderance of the evidence, the tipping of the scales one way or another in

favor or not. You should keep in mind that regardless of whether direct evidence, circumstantial evidence, or a combination of the two is relied upon, in order for a conviction, all the elements of the crime must be proven beyond a reasonable doubt before you may find the defendant guilty."[1] (Emphasis added.)

The court further instructed the jury on at least ten occasions that it was the state's burden to prove the elements of the crime charged beyond a reasonable doubt. This court has held that where the trial court repeatedly instructs that the burden is on the state, a single instance of misstating which party has the burden is unlikely to result in improperly shifting the burden. See *State* v. *Castillo*, 11 Conn. App. 621, 627–28, 528 A.2d 860, cert. denied, 205 Conn. 804, 531 A.2d 938 (1987) (no constitutional deprivation when jury correctly charged "in a number of places during the charge"). Moreover, the court instructed the jury several times that the defendant is presumed innocent until proven guilty.

We also note that substantial direct evidence was presented by the state to establish that the defendant was the perpetrator of the robbery. Sundeep Gill made a positive in-court identification of the defendant, and her testimony revealed that she had ample opportunity to observe the robber before, during and after the robbery.

In addition, the only evidence that the defendant offered pertained to his identity. Specifically, through his testimony and that of his mother, the defendant

---

[1] The defendant incorrectly states in his brief that "the jury was told, as a matter of law and in the context of furnishing a general guide for evaluating any evidence proffered by the defendant, that it *must* hold the defendant to a preponderance of the evidence." (Emphasis added.) Although the instructions as to the defendant's burden were a correct statement in the event of an affirmative defense, no affirmative defense was offered in this case.

offered an alibi defense that he was elsewhere at the time of the robbery. The trial court correctly charged on the defendant's burden of proof in relation to the only evidence that the defendant offered. The trial court instructed the jury that "[t]he other issue here is identification. It's an issue in this case as to whether or not the defendant is the perpetrator, the one who committed the crime. The state has the burden of proving the identity beyond a reasonable doubt. It is not essential that a witness . . . be free from doubt as to the correctness of their statement; however, you the jury must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may convict him. If you were not convinced beyond a reasonable doubt that this defendant was the person who committed the crime at that gas station, then you must find the defendant not guilty."

The trial court then went on to charge the jury on the alibi testimony in context with testimony of the defendant's mother. The trial court instructed the jury: *"Remember, the defendant does not have to prove his claim that he was elsewhere.* It is sufficient if on considering all the evidence there arises in your mind a reasonable doubt as to his presence at the scene of the crime when it was committed. If you do conclude that there is such doubt, then, of course, the defendant would be entitled to an acquittal of the charge of robbery in the first degree. But you must examine all the testimony bearing on that—the direct and cross-examination of both him and his mother in respect to that." (Emphasis added.) Accordingly, we conclude that when the trial court instructed the jury on the alibi evidence offered by the defendant, it correctly and clearly stated that the state has the burden of proving identity beyond a reasonable doubt.

Having examined the charge as a whole, we conclude, as our Supreme Court concluded in *Mullings,* that it

was not reasonably possible in this case that the isolated use of the phrase "may be held to the burden of a fair preponderance of the evidence, the tipping of the scales one way or another in favor or not" confused or misled the jury with regard to the state's heavy burden of proof. See *State* v. *Mullings*, supra, 202 Conn. 13; see also *State* v. *Milardo*, 224 Conn. 397, 409, 618 A.2d 1347 (1993). Therefore, no constitutional violation clearly exists, and the defendant's challenge to the trial court's burden of proof instruction fails under the third prong of *Golding*.

II

The defendant also claims that the trial court improperly allowed the state to present rebuttal testimony to impeach him with evidence of a collateral matter. Specifically, the defendant denied that he changed his appearance to deceive anyone in the courtroom and testified that "when they took me to jail they cut the hair." In rebuttal, the state, over objection, presented Shephard who testified that there was no requirement that an inmate cut his hair or shave. The defendant claimed that the evidence was collateral and objected.

"The determination of whether a matter is relevant to a material issue or is collateral generally rests within the sound discretion of the trial court." *State* v. *Valentine*, 240 Conn. 395, 403, 692 A.2d 727 (1997). In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the trial court's rulings on evidentiary matters. See 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 35, p. 159.

The extent to which rebuttal testimony may be carried is within the discretion of the trial court. See 1 B. Holden & J. Daly, supra, § 11, p. 64. "As a general rule, extrinsic evidence of a prior inconsistent statement may not be admitted to impeach the testimony of a witness

on a collateral matter. . . . Thus, on cross-examination, a witness' answer regarding a collateral matter is conclusive and cannot be contradicted later by extrinsic evidence. . . . Extrinsic evidence of a prior inconsistent statement may be admitted, however, to impeach a witness' testimony on a *noncollateral* matter. . . . A matter is not collateral if it is relevant to a material issue in the case apart from its tendency to contradict the witness." (Citations omitted; emphasis in original.) *State* v. *Valentine*, supra, 240 Conn. 403. " 'The party who initiates discussion on the issue is said to have "opened the door" to rebuttal by the opposing party.' " *State* v. *Arbour*, 29 Conn. App. 744, 750, 618 A.2d 60 (1992).

We have stated previously that the primary issue in the present case was one of identification. The defendant's testimony that the center personnel cut his hair opened the door to rebuttal on that topic. Furthermore, the rebuttal testimony was relevant to show that the defendant cut his hair of his own volition to alter his appearance. Accordingly, we find no abuse of discretion.

The judgment is affirmed.

In this opinion the other judges concurred.